NO. 07-02-0020-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 14, 2002
_____

IN THE INTEREST OF K.D.K., A MINOR CHILD
_____

FROM THE 253RD DISTRICT COURT OF LIBERTY COUNTY;

NO. 51,737; HON. CHAP B. CAIN, III, PRESIDING
_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

In this appeal, the Attorney General of Texas (the State) challenges a judgment of the trial court holding that appellee Ralph Paul Keeling (Ralph) owes no arrearage in child support and is entitled to a reimbursement from the State for wages and tax refunds withheld. In three issues, the State contends 1) Ralph's payment of child support directly to his former spouse could not discharge his debt because his former spouse had assigned her right to receive child support to the State and Ralph received notice of that assignment, 2) Ralph failed to exhaust his administrative remedies so the trial court lacked jurisdiction to render judgment against the State, and, alternatively, 3) Ralph's failure to

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2002).

use available administrative remedies waived his counterclaim for reimbursement from the State. We reverse the judgment of the trial court and remand for a new trial.

## Background

Ralph and Vikki Keeling were divorced by order dated August 30, 1996. Vikki was awarded custody of their minor child, and Ralph was ordered to pay child support at the rate of $200 per month ($100 semi-monthly). That decree directed that child support payments were to be made to the district clerk's office and that any direct payments to Vikki were deemed in addition to and not in lieu of his child support obligation. There was also a warning in capital letters as follows: "FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT."

In December 1996, a notice of assignment was filed showing that Ralph was ordered to pay child support to the Attorney General because his child was receiving financial assistance under the Aid to Families with Dependent Children Program (AFDC). On December 20, 1996, the court signed an order directing that payments were to be made to the Office of the Attorney General through the registry of the court. Despite these circumstances and the admonitions in the divorce decree, Ralph continued to make his monthly support payments directly to Vikki. Ralph also bought Vikki a vehicle for which she gave him credit against his future support payments.

The State subsequently filed a motion for enforcement of the child support order and sought collection of the amounts Ralph failed to pay to the State. Ralph's employer

2

was also administratively ordered to withhold payments, and the State intercepted his federal tax refund.

The trial court held a hearing and found there was no arrearage in Ralph's child support obligation and that he was entitled to reimbursement of $5,463 from the State for monies which were wrongfully withheld or garnished. The State appealed.

### Issue One - Discharge of Obligation to the State

In the first issue, it is argued that because Ralph received notice of the assignment of Vikki's child support payments to the State, he could not legally discharge his obligation by making payments directly to her. Thus, the trial court erred in declaring that he owed the State nothing. We agree and sustain the issue.

As authorized by federal law, the approval of an application for financial assistance constitutes an assignment to the Office of the Attorney General of any right the applicant or his child has to child support from any other person. TEX. FAM. CODE ANN. §231.104(a) (Vernon 2002). Thus, once Vikki applied for and began receiving AFDC benefits, the State was entitled to receive (via assignment) Ralph's child support payments as reimbursement for the financial assistance being given to Vikki. *In the Interest of A.M.E.,* 71 S.W.3d 401, 403 (Tex. App.—San Antonio 2001, no pet.) (holding to that effect).

Moreover, Ralph did not argue that he failed to receive notice of the assignment of Vikki's right to child support or of the court's order directing payment to the State. Indeed, after those documents were executed, he communicated to the State and explained that he was making the payments directly to Vikki because when she received child support

3

from the district clerk the money took too long to reach her and she did not receive the full $200 per month. Thus, it is clear that he knew of the assignment in question.

Parties to a divorce decree do not have the authority to modify a child support obligation without court approval. *State v. Borchers,* 805 S.W.2d 880, 882 (Tex. App.—San Antonio 1991, writ denied). Nor may they opt to disregard federal and state law effectuating assignments. Thus, by law, Ralph's support payments belonged to the State, and sending them directly to Vikki did not somehow negate the State's right to them. And, though Ralph delivered the payments to someone other than the assignee, he remains liable for their payment to the State. *See Buffalo Pipeline Co. v.* Bell, 694 S.W.2d 592, 596 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.); (holding that after the debtor receives notice of a valid assignment, payment made by the debtor to the assignor or to any person other than the assignee does not discharge the debtor from liability to the assignee); *Manes Const. Co., Inc. v. Wallboard Coatings Co., Inc.,* 497 S.W.2d 334, 337 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ) (holding that where the account debtor paid money directly to the assignor of accounts receivable at a time when he had actual notice of the assignment, the debtor subjected himself to double liability). Therefore, the trial court erred in finding that Ralph was not indebted to the State and in rendering judgment in favor of Ralph for the monies or tax refunds withheld from his pay and intercepted, respectively.

Our disposition of this issue relieves us from having to address the State's remaining issues. Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.

4

Brian Quinn
Justice

Do not publish.