**OFFICE OF the ATTORNEY GENERAL, Appellant,**

v.

**Stephanie R. CARTER, Appellee.**

No. 14–97–00280–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 27, 1998.

---

Rhonda Amkraut Pressley, Austin, for appellant.

Stephaine Carter, Houston, Mary Streeter, Jonesboro, GA, for appellee.

Before MURPHY, C.J., and HUDSON and CANNON,* JJ.

## OPINION

CANNON, Justice (Assigned).

At the request of the State of Georgia and as the Texas Title IV–D agency, appellant, the Office of the Attorney General ("Attorney General"), filed an interstate child support action seeking support from appellee, Stephanie R. Carter ("Carter"), an absent parent. *See* 42 U.S.C.A. §§ 651–69 (West 1991 & Supp.1995); Tex.Fam.Code Ann. §§ 101.033, 102.007, 159.307 (Vernon 1996 & Supp.1998). Carter, however, defaulted. The trial court refused to enter a support order on the ground that although the maternal grandmother, Mary F. Streeter ("Streeter"), has possession of and receives public assistance for the support of her granddaughter, Iesha Carter ("Iesha"), she does not have legal custody of Iesha. In his sole point of error, the Attorney General claims the trial court erred in refusing to enter a child support order against Carter, whose child, Iesha, received public assistance and Medicaid benefits from the State of Georgia. We affirm.

A support claim is like a claim for debt in that it seeks a personal judgment establishing a direct obligation to pay money. *See Perry v. Ponder,* 604 S.W.2d 306, 312–13 (Tex.App.—Dallas 1980, no writ). Each parent is obligated to support his or her child during the period of the child's minority, and

---

* Senior Justice Bill Cannon sitting by assignment.

is liable to *any person* who provides necessaries for that child. *See* TEX.FAM.CODE ANN. § 151.003(c); *Creavin v. Moloney,* 773 S.W.2d 698, 702 (Tex.App.—Corpus Christi 1989, writ denied). This duty is imposed at the birth of the child, and is not altered merely because the parents subsequently get divorced. *See Creavin,* 773 S.W.2d at 703. Thus, *any person,* including the other parent, who provides necessaries for that child *may bring suit* to recover from a parent who fails to discharge that duty of support. *See id.; Lawrence v. Cox,* 464 S.W.2d 674, 675 (Tex. App.—Waco 1971, writ dism'd w.o.j.) (holding any person who has supplied necessities to a child *may sue* and recover from the child's parent for value of the supplies or services furnished to the child).

In the instant case, Streeter did not sue Carter for the money she has spent on necessaries for Iesha. Instead, the Attorney General filed an Uniform Interstate Family Support Act ("UIFSA") Petition seeking an order from the trial court to withhold all child support from Carter's disposable earnings pursuant to TEX.FAM.CODE ANN. § 159.305(b)(3). UIFSA, codified in the Texas Family Code,[1] permits a responding tribunal, upon receiving a petition from an initiating tribunal, to establish, enforce, or modify child support. *See* TEX.FAM.CODE ANN. §§ 159.305. Upon finding that an obligor owes a duty of support, a responding tribunal "shall issue a support order directed to the obligor." *Id.* § 159.401(c). Thus, the Attorney General contends that UIFSA required the trial court to enter a support order for Iesha because Carter has a duty as a parent to support her child regardless of whether orders for custody or conservatorship exist. The Attorney General's contention is incorrect because UIFSA does not contemplate situations like Streeter's where a nonparent is not a legal custodian of the child.

 While it is true that a parent has a duty to support his or her child, under UIFSA, a nonparent seeking a support order to be established and enforced against a parent must have legal custody of the child. *See generally id.* § 159.101(12) (defining "obligee"); Robert E. Oliphant, *Is Sweeping Change Possible? Minnesota Adopts the Uniform Interstate Family Support Act,* 21 WM. MITCHELL L.REV. 989, 996–1005 (1996) (discussing the background and history of UIFSA).[2] As previously stated, the statute requires an "obligor" to owe a duty of support to an "obligee." *See* TEX.FAM.CODE ANN. §§ 159.101(12), (13). "Obligee" means:

(A) an individual to whom a duty of support is or is alleged to be owed or in whose favor a support order has been issued or a judgment determining parentage has been rendered;

(B) a state or political subdivision to which the rights under a duty of support or

---

1. *See* TEX.FAM.CODE ANN. ch. 159 (Vernon 1996 & Supp.1998).

2. The historical development of UIFSA began in 1935 when Congress passed the Social Security Act which contained a provision for furnishing funds to destitute mothers to help care for their dependant children, and required a parent absent from the home to pay child support. *See* Oliphant, *Is Sweeping Change Possible? Minnesota Adopts the Uniform Interstate Family Support Act,* 21 WM. MITCHELL L.REV. at 995–96. However, there was no effective mechanism to ensure that an absent parent would provide the support. *Id.* at 996. Thus, in 1950, the Uniform Reciprocal Enforcement of Support Act ("URESA") was approved and it

> provided a mechanism for establishing child support obligations and enforcing them across state lines without the necessity of a custodial parent traveling to a distant forum. Either the custodial parent or the state, on

> behalf of the child and custodial parent filed a support petition in the initiating state, usually the state where the custodian and child lived. The petition then was forwarded to the responding state, ordinarily where the noncustodial parent resided or owned property.

*Id.* at 997.

In 1968, the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"), a new version of URESA was approved. *See id.* at 998. RURESA, like its predecessor URESA, provided a mechanism for a custodial spouse to initiate in a court in his or her own jurisdiction a petition for determination of a support award or for enforcement of a prior support order. *See id.* at 999. RURESA was amended in 1993 and is now codified as UIFSA, TEX.FAM.CODE ANN. ch. 159. *See McConnell v. Attorney Gen. of Tex.,* 878 S.W.2d 281, 284 (Tex.App.—Corpus Christi 1994, no writ). UIFSA's history indicates it applies in situations where a party has legal custody of the child.

support order have been assigned or that has independent claims based on financial assistance provided to an individual obligee; or

(C) an individual seeking a judgment determining parentage of the individual's child.

*Id.* § 159.101(12). An "obligor" is an individual or the estate of a decedent:

(A) who owes or is alleged to owe a duty of support;

(B) who is alleged but has not been adjudicated to be a parent of a child; or

(C) who is liable under a support order.

*Id.* § 159.101(13). In the context of a child support order, while the child is "the person to whom the duty of support is owed and therefore can be viewed as the ultimate obligee ..., 'obligee' usually refers to the individual receiving the payments." SAMPSON & TINDALL'S, TEXAS FAMILY CODE ANNOTATED § 159.101, Commissioners' Comment to UIFSA Section 101 at 535 (1997). The Commissioners' Comment to section 159.101 provides additional information which helps clarify who, other than the child, may be an obligee and receive child support payments under UIFSA:

> While [the obligee] is most commonly *the custodial parent or other legal custodian*, the "obligee" may be a *support enforcement agency which has been assigned the right to receive support payments* in order to recoup Temporary Assistance for Needy Families (TANF) ..., formerly known as Aid to Families with Dependent Children (AFDC).

*Id.* (emphasis added) (citation omitted). According to the Commissioners' Comment, the custodial parent or legal custodian of the child is the one who has the right to receive support payments, and that a support enforcement agency may also have the right to receive support payments if the custodial parent or legal custodian assigns his or her right to receive payments to the agency.[3] *See id.*

■ In this case, Streeter was not Iesha's custodial parent or legal custodian. Thus, she was not an obligee under the statute's definition. *See* TEX.FAM.CODE ANN. § 159.101(12); SAMPSON & TINDALL'S, TEXAS FAMILY CODE ANNOTATED § 159.101, Commissioners' Comment to UIFSA Section 101 at 535. Moreover, because Streeter had no right to receive support payments, she had no rights to assign to the State of Georgia's Department of Human Resources. Thus, Georgia's Department of Human Resources was not an obligee under the statute's definition. *See id.* Consequently, the trial court did not err in refusing to enter a child support order for Iesha.

In support of appellant's contention that Texas law does not limit the right to child support to parents or legal custodians, the Attorney General relies on chapter 102 of the Texas Family Code which provides that "a person who has had actual care, control, and possession of the child for not less than six months preceding the filing of the petition" may file an original suit. TEX.FAM.CODE ANN. § 102.003(9). Appellant's reliance on this provision is misplaced. Section 102.003(9) determines who has general standing to file suit in a "suit affecting the parent-child relationship" ("SAPCR"). *Id.* A proceeding filed under UIFSA, however, is not a SAPCR. *See id.* § 101.032(b)(2); *see also Brown v. State ex rel. Jarvis* 808 S.W.2d 628, 633 (Tex.App.—Austin 1991, writ denied) (holding that a RURESA action is not a SAPCR and the guidelines for determining the terms

---

**3.** We believe if the Texas Legislature had intended "obligee" to include a nonparent without legal custody who is supporting the child, they would have so stated. *See generally* TEX.FAM.CODE ANN. § 159.101(12); SAMPSON & TINDALL'S, TEXAS FAMILY CODE ANNOTATED § 159.101, Commissioners' Comment to UIFSA Section 101 at 535. Moreover, a grandparent has no duty to support his or her grandchild. *See Blalock v. Blalock*, 559 S.W.2d 442, 443 (Tex.Civ.App .—Houston [14th Dist.] 1977, no writ). Unless a grandparent has a legal obligation to care for the grandchild, as a legal custodian or legal guardian, the grandparent has no legal duty to spend the money received under a support order for the child's care. *See generally* TEX FAM.CODE ANN. §§ 153.371, .372 ("Rights and Duties of Nonparent Appointed as Sole Managing Conservator"; "Nonparent Appointed as Joint Managing Conservator"). Thus, establishing a child support order withholding a parent's income and requiring the money to be paid to an individual who has no legal obligation to care for the child, is contrary to public policy.

of possession apply only in a SAPCR). Thus, section 102.003(9) does not apply in this case.

Moreover, all of the cases cited by the Attorney General supporting his position that the trial court should have entered a support order involve a parent or a legal custodian. *See generally County of Alameda, State of Cal. v. Smith,* 867 S.W.2d 767 (Tex.1994) (per curiam) (involving paternity action brought by the county on mother's behalf against alleged father in which the court found paternity and awarded child support); *In re S.A.V. and K.E.V.,* 837 S.W.2d 80 (Tex.1992) (concerning mother and father who had joint custody of the children and the mother sought to have the order establishing child support modified); *In re Hidalgo,* 938 S.W.2d 492 (Tex.App.—Texarkana 1996, no writ) (appointing biological mother and step-grandmother joint managing conservators, appointing stepmother possessory conservator, and ordering the mother to pay child support); *Brown,* 808 S.W.2d 628 (involving a mother who had custody in North Carolina, where the Attorney General filed a petition on behalf of her and her child seeking child support and medical coverage from the father who lived in Texas); *Perry,* 604 S.W.2d 306 (concerning a child support and custody suit instituted by the mother living in Texas with the children against the father who lived in Alabama).

We are not holding that Carter is not liable to Streeter for the necessaries Streeter provided for Iesha. However, Streeter may not seek support from Carter under UIFSA because it requires that either (1) a support order exist or (2) Streeter have legal custody of Iesha. *See* TEX.FAM.CODE ANN. § 159.101(12); SAMPSON & TINDALL'S, TEXAS FAMILY CODE ANNOTATED § 159.101, Commissioners' Comment to UIFSA Section 101 at 535. In this case, there is no existing support order, and Streeter only has possession of Iesha, not legal custody. Streeter may sue Carter to be reimbursed for the necessaries she has provided Iesha. *See Creavin,* 773 S.W.2d at 702; *In re E.L.P.,* 636 S.W.2d 579, 582 (Tex.App.—San Antonio 1982, no writ); *Lawrence,* 464 S.W.2d at 675. The Attorney General, however, cannot petition the trial court under UIFSA to issue a child support order withholding Carter's income. *See* TEX.FAM.CODE ANN. § 159.101(12); SAMPSON & TINDALL'S, TEXAS FAMILY CODE ANNOTATED § 159.101, Commissioners' Comment to UIFSA Section 101 at 535. Accordingly, the Attorney General's sole point of error is overruled.

The judgment of the trial court is affirmed.